*In the Matter of the Application of* ALBERT W. PATS-
WALD, *for a writ of Habeas Corpus.*

1. HABEAS CORPUS—*Jurisdiction in—Relief by.* The writ of *habeas corpus* is an ancient prerogative writ. It is a. writ of right granted to inquire into all. cases of illegal imprisonment. The right to relief from unlawful imprisonment through the instrumentality of the writ of *habeas corpus* is not the creation of any statute, but exists as part of the common law of this territory. The writ cannot be abrogated or its efficiency impaired by legislative action; and cases within the relief afforded by the writ at common law, cannot, under the constitution, be placed beyond its reach.

2. EXTENT AND SCOPE OF. At common law the writ went to an inquiry into all cases of illegal imprisonment, but not to cases of irregularities or errors merely. If the process or judgment under which the party was in custody, was irregular or erroneous merely; if the court or officer rendering the judgment, or issuing the process, had jurisdiction to render the judgment or issue the process, the courts would not interfere by *habeas corpus*, but would leave the party to his writ of error. But if the court or officer was without jurisdiction or power to render the judgment, or issue the process, the imprisonment was illegal and the courts would relieve by *habeas corpus*.

3. HABEAS CORPUS ACT—*Construction of.* The provisions of the *habeas corpus* act of this territory, (§ 4578, Laws of 1893), excluding from its benefits persons committed or detained by virtue of any process issued on any final judgment of a "court of competent jurisdiction," only applies when the tribunal had jurisdiction to render the particular judgment. A court of "competent" jurisdiction is one having power and authority of law at the time of acting to do the particular act. The prohibition contained in said section, forbidding inquiry into the legality of any process or judgment specified in the provision above referred to, does not take from the court or officer having jurisdiction of the writ, the power, or relieve from the duty, of determining whether the judgment or process emanated from a court of competent jurisdiction to issue the process or render the judgment.

4. JURISDICTION OF PERSON AND SUBJECT-MATTER NOT CONCLUSIVE. Jurisdiction of the person of the prisoner and of the subject-matter are not alone conclusive, but the jurisdiction of the court to render the particular judgment is a proper subject of inquiry; and, while the court cannot go behind the judgment and inquire into alleged errors and irregularities not affecting the power or authority of the court preceding the judgment, the question is presented and must be determined whether upon the whole record the judgment was warranted by law and was within the jurisdiction of the court.

5. JUDGMENT VOID BY ABSENCE OF JUDGE WHILE JURY DELIBERATING. Where, during the trial of a criminal cause, and while the jury was in charge of the bailiffs deliberating of a verdict, the court was adjourned for two days and the judge went to another county and opened and held a term of court there; *held*, that the term terminated by operation of law as to that case, when the judge left the place where the court is by law required to be held, and went to the other county and there opened court; that in his absence the jury had no authority to consider the case; that the jurisdiction having been suspended by the dissolution of the court, could not be resumed by the return of the judge; that the jury could not lawfully return a verdict in the case; that a verdict returned and a judgment therein were *coram non iudice*, and void.

## Original Proceeding in Habeas Corpus.

Petition for writ of *habeas corpus* by Albert W. Patswald. Petitioner convicted in the district court of Oklahoma county, sitting with the powers and jurisdiction of a United States district court, of the crime of perjury and sentenced to imprisonment in the United States penitentiary at Leavenworth, Kansas, for a term of three years; to pay a fine of one dollar and the costs of prosecution, taxed at $2,416.15.

*Dille & Burford*, for petitioner.

*C. R. Brooks, United States Attorney, T. F. McMechan* and *Roy Hoffman, Assistant United States Attorneys*, per contra.

The opinion of the court was delivered by

TARSNEY, J.: The case out of which this proceeding grows was before us at the January term, last, upon

petition in error, and the judgment of the district court was then affirmed, (*Patswald v. United States*, this volume, p. 351, 49 Pac. Rep. 57). The petitioner brings this proceeding to test the validity of the judgment upon a question of jurisdiction not appearing in the record upon the appeal.

Petitioner is in the custody of the respondent, Patrick S. Nagle, United States marshal, under said judgment. The issuing of the writ, a return thereto, and the bringing of the petitioner before the court is by the parties expressly waived and the cause is submitted upon an agreed statement of facts.

A question confronts us and must be considered *in limine* as to the jurisdiction of the court to consider the question presented in the petition and agreed statement of facts. It is strongly contended by counsel for repondent that *habeas corpus* is not the proper proceeding in which to present the question of the validity of a judgment; that where the imprisonment is under the judgment of a court of competent jurisdiction, such judgment cannot be attacked collaterally; that the proceeding for relief therefrom, if the judgment is erroneous, must be by proceedings in error; that no matter how irregular or invalid, if the judgment is regular upon its face, where the process upon such judgment is a justification of the officer, the judgment cannot be reviewed or the proceedings inquired into in *habeas corpus* proceedings. It is contended that we are precluded from inquiring into the errors alleged in this petition by the provisions of § 4578 of the statutes of this territory, (Laws of 1893, p. 881), which reads:

"No court or judge shall inquire into the legality of any judgment or process whereby the party is in custody, or discharge him when the term of commitment has not

expired, in either of the following cases: *Second*: Upon any process issued on any final judgment of a court of competent jurisdiction."

In *ex parte Harlan*, 1 Okla. 48, this court has said:

"The law is well settled that in a case like the present, in which the petitioner is in execution upon a conviction, the writ of *habeas corpus* ought not to be awarded, if the trial court had jurisdiction of the person and of the crime charged, and did no act beyond the powers conferred upon it. And the proceedings of the trial court will be examined so far as necessary to determine the question of jurisdiction. And if it appears that the court trans- cended its powers, the writ will be granted and the prisoner discharged even after judgment. But if the trial court had jurisdiction and power to convict and sentence, the writ cannot issue to correct mere errors."

This case was decided before the Statute of 1893 was enacted and consequently does not determine the effect of that statute.

In *ex parte LeRoy*, 3 Okla. 322, it is contended, is conclusive against the petitioner in this case, and, unless expressly overruled, is conclusive against the jurisdiction of this court to inquire into the question presented upon this petition. A decision is never conclusive except as to the questions therein involved and necessarily deter- mined. In that case it appeared that an indictment in the district court charged the crime of grand larceny in two county against the petitioner; that upon the trial of the case, when submitting the same, the court instructed the jury to return a verdict of "not guilty" upon the first count of the indictment; and, after deliberating, the jury returned a verdict of "guilty" as to the second count of the indictment. In proceedings of *habeas corpus* it was held, and correctly, that questions of the sufficiency of pleadings can never be made the subject of inquiry by

*habeas corpus.* Mr. Justice Scott based the decision in that case upon one paragraph of the syllabus in *ex parte Harlan*, reading:

"After conviction of perjury, the accused cannot be discharged on *habeas corpus* if the trial court had jurisdiction of the person and of the crime, however erroneous its proceedings may be."

He also cites without comment, § 4578 of the statute. It is hardly apparent where there was any error in the record complained of in that case and it was not necessary for the court to construe § 4578, or to determine the effect or scope of its limitations upon the powers of courts in *habeas corpus*, nor was it therein construed. Independent of the statute, in *ex parte Harlan* it was held that:

"If the trial court has no jurisdiction in a criminal case, its judgment is void and the party convicted and sentenced will be discharged on *habeas corpus.*"

And in *Seagrave, petitioner,* 4 Okla. 422, and *Baxter v. Thomas et al.* 4 Okla. 605, the court discharged the petitioners after conviction upon the ground that the trial court had no jurisdiction. The convictions in those cases were after the enactment of the Statute of 1893, but the question of the effect of the statute was not presented in either of those cases. It may, therefore, be said that there has been no direct adjudication or interpretation of this statute in this territory, and that the question of its validity, scope and effect is undetermined. It will not be contended upon one hand that if proceedings criminal, which results in a conviction, are irregular or erroneous, merely voidable but not void, they can be reviewed in *habeas corpus* proceedings or in any other manner than by a direct proceeding in the cause. On the other hand, it must be conceded that if such proceedings were wholly void, if the court or officer had no

jurisdiction, at common law, the court had jurisdiction by *habeas corpus* to inquire into such proceedings and, if found to be void, to discharge from imprisonment thereunder; and that jurisdiction is in this court in this case unless taken away by statute.

At the common law, if the party is detained on process, the existence and validity of the process are the only facts in issue; and the right to inquire into the process is co-extensive with that which is allowed in an action for false imprisonment. If the process is valid on its face, it will be deemed *prima facie* legal and the prisoner must assume the burden of impeaching its validity, by showing a want of jurisdiction. Error, irregularity or want of form is no objection; nor is any defect which may be amended or remedied by the court from which it issued. If there was no legal power to render the judgment or decree, or issue the process, there was no competent court, and consequently no judgment or process. All is *coram non judice* and void. (3 Hill, [N. Y.], 659, 661, 665 and note; *In re. Newton*, 16 C. B. 97).

When a prisoner is held under a judgment of a court made without authority of law, the proper tribunal will, upon *habeas corpus*, look into the record so far as to ascertain this fact and, if it be found to be so, will discharge the prisoner; and it is no answer to say that the court had jurisdiction of the person and of the offense; it by no means follows that these two facts make valid, however erroneous it may be, any judgment the court may render in such a case. (*Ex-parte Lange*, 18 Wallace, 163). A proceeding defective for irregularity and one void for illegality may be reversed upon error or *certiorari;* but it is the latter defect only which gives

authority to discharge on *habeas corpus.* (Hurd on *Habeas Corpus*, 333). Illegality is properly predicable of radical defects only and signifies that which is contrary to the principles of law as distinguished from mere rules of procedure. (Tidd's Practice, 435). The inquiry is necessarily in every case, whether the process is void and the officer or court having jurisdiction of the writ must pass upon it. If a process, good in form, issued upon a judgment of a court having jurisdiction, either general or limited, must in all cases be assumed to be valid until the judgment be reversed upon error, the remedy by *habeas corpus* will be but of little value, (*People ex rel. Tweed v. Lipscomb*, 60 N. Y. 559). It matters not what the general powers and jurisdiction of a court may be, if it acts without authority in the particular case, its judgments and orders are mere nullities —not voidable but simply void—protecting no one acting under them, and constituting no hindrance to the prosecution of any right. (*Elliott v. Piersol*, 1 Pet. 328).

There is no question but that at the common law and in the absence of a statute, illegalities which make void a judgment in a criminal action, no matter by what court such judgment may have been rendered, may be inquired into on *habeas corpus,* and if the judgment is found to be void the prisoner may be discharged. Does our statute change this rule of the common law and take away this right of inquiry? If such were the intended effect of the statute, our answer would be: The power is not in the legislature to take away this right. Relief from illegal imprisonment by means of this remedial writ is not the creature of any statute. The right to be discharged from illegal imprisonment is not derived from the famous statute of Charles II., of England, (31 Car. 2 C. 2), nor from the later act of 56 Geo. III., nor from

any statute of this territory.   It was in use before *Magna Charta* and came to us an inheritance from the mother country, and exists as a part of the common law of this territory, and it is made a part of our constitution that no person shall be deprieved of his liberty "without due process of law.   (Amendment to Cons. Art. 5).

This writ cannot be abrogated or its efficiency curtailed by legislative action.   Cases within the relief afforded by it at common law cannot, until the people voluntarily surrender the right to this, the greatest of all writs, by an amendment of the Organic Law, be placed beyond its reach and remedial action.   Its privileges can not be even temporarily suspended except for the safety of the state in cases of rebellion and invasion.   (Const. Art. 1, § 9).   That provision of the constitution is a guaranty that the right of the writ of *habeas corpus* should remain as it existed at the common law and should not be curtailed by legislative enactment or by subtle and metaphysical judicial interpretation, and legislatures can no more prevent its application to cases where it would have been applicable at common law, than they can abrogate the right of trial by jury.   Nor do we think that it was intended by our legislature to curtail the privileges of this writ.   Many of the states of the Union have statutes substantially if not identically like ours, and in none of these states, save one, as we are advised, has the construction contended for by counsel for respondent in this case, been placed upon such statute.   New York, Missouri and Kansas have statutes identical with ours.   In Kansas and Missouri, notwithstanding the statute, it is held that where a prisoner has been committed by a court having absolutely no jurisdiction, the validity of the commitment may be inquired into.   (*In re.* Petty,

22 Kan. 477; *Ex-parte Snyder*, 64 Mo. 58). In New York it is held that the statute is in harmony with the common law and takes away no right or jurisdiction to inquire if the judgment is void. (*People ex rel. Tweed v. Lipscomb*, 60 N. Y. 559).

Counsel for respondent rely upon and press earnestly upon our attention, as holding directly the contrary of the views herein expressed, the case *In re. Lybarger*, Sup. Court Washington, 25 Pac. 1075. This case denies that the writ could be used at the common law to inquire as to the jurisdiction of the court which rendered the final judgment upon which the petitioner was held, and predicates that conclusion upon the fact that prior to the act of 56 Geo. III., the return of the officer was conclusive, and if he returned that he held the petitioner by virtue of process issued by a court of competent jurisdiction, that was the end of the inquiry, and however false the return might be, the only remedy was by an action for false return. That this being the law and practice in England at the time we took therefrom our common law, by that law and practice is the scope of the writ limited and restricted in this country in the absence of statute.

It will be observed that this case predicates a limitation of the right, upon a rule of evidence and practice. It confounds a principle of right, with a rule of procedure. That court would hardly contend that in adopting the principle of right, we also irrevocably adopted the rules of evidence and practice built up by judges subservient to arbitrary kings for the purpose of making unavailable the right. It is true that by the procedure upon writs of *habeas corpus* at the common law, the return was generally conclusive; not always, for the petitioner may confess and avoid such a return by admitting

the truth of the matters contained in it, and suggest others, not repugnant, which take off the effect of them. (Hurd *Habeas Corpus*, 270). The return was generally conclusive but not conclusive of the right, but only of the truth of the facts stated in the return; and if the facts stated in the return showed the petitioner to be illegally imprisoned, he would be discharged. Then how does the doctrine of the *Lybarger* case sustain the contention of the respondent in this case? Here we have an agreed statement of facts which stands in the place of the return; it must be taken as true; it is conclusive; and if it, upon its face, shows the conviction and imprisonment of the petitioner to be illegal, must he not be discharged? But we prefer to follow the conclusion of the majority of the authorities upon this question and hold that the return is not conclusive; that a petitioner may show that his imprisonment is illegal, by showing that the judgment under which he is held is void. In other words, he may, under the authority of the statute, as well as the common law, show that he is not in custody upon any process issued on any final judgment of a court of competent jurisdiction by showing that, although the judgment appears to have been rendered by a court of competent jurisdiction, yet the court did not have the power or authority at the time of rendering the judgment, to render the particular judgment; that it was then incompetent to render the judgment.

II. The agreed statement of facts shows that at the November term, 1895, of the district court of Oklahoma county, the petitioner was tried for the crime of perjury; that on the 21st day of December, 1895, the cause was submitted to the jury and they retired in charge of bailiffs to deliberate and consider of their verdict; that the

court, upon the retirement of the jury, adjourned until the 23rd inst.; that on the 23rd it adjourned until the 24th, when the court was again adjourned until the 26th. When the court was adjourned on December 24, Judge Scott, the presiding judge, immediately left Oklahoma City and went to Norman, in Cleveland county, and there opened an adjourned term of the district court of Cleveland county, and there transacted a large amount of business. On December 26, Judge Scott returned to Oklahoma City, opened court and received the verdict of the jury in this case. During all the time the presiding judge was absent from Oklahoma City, the jury remained in charge of the bailiffs and in consideration of the case and were deliberating upon the case and of their verdict.

The one question to be determined is: Did the absence of the presiding judge discharge the jury from the consideration of the cause and, by operation of law, terminate the trial of the cause so as to render void the further proceedings had therein? By law, the terms of the district court of Oklahoma county are fixed to be held at Oklahoma City, and cannot be held at any other place. No person can be lawfully deprived of his liberty except "by due process of law." Due process of law would in this case imply, upon conviction by a court of competent jurisdiction. A court of competent jurisdiction for the trial of the crime of perjury, consists of a presiding judge and a jury. It is not a court unless there be both judge and jury. It is the very existence and vitality of the court which authorizes the jury to deliberate. It is the existence and authority of the court which keeps them together, and that existence and authority must continue from the time they are empanelled until they are discharged. (*Barrett v. State*, 1 Wis. 156). For all general purposes the court is

considered as in session from the commencement to the close of its term. The jurors, officers and parties are all under its direction. The functions of the court cannot be suspended and the functions of the jury continue. To hold the contrary would be to throw off all those salutary restraints which have been found necessary to the due and solemn administration of justice. The jury are under the control and protection of the court. A juror may be punished for misconduct as for contempt. If an officer having charge of a jury should desert his post or tamper with the jury, he would be punishable as for contempt. If the room in which the jury are deliberating be surrounded by rioters or tumultuous persons, for the purpose of influencing their deliberations or interrupting their discussions, such persons would be punishable for contempt of court. The jury may, while deliberating, properly require of the court additional instructions as to the law of the case, or require of the court explanation of the meaning of the instructions given. They may, in the presence of the court and by permission of the court, have their memories refreshed as to the testimony in the case. All these privileges and safeguards are in great measure for the protection of the rights of the defendant, and nothing but the existence and presence of the court during every part of the proceedings of his trial can insure them to him. The rioter, the juror or the officer could not be punished for contempt if there was no court in existence when their acts of misconduct were committed; and the jury could not have the benefit of additional instruction or refreshment of memory as to evidence if there was no court at the time in actual existence to assist them. The presence, actual or constructive, of a judge at every stage of the proceedings in a court, is necessary, or the proceedings will be *coram non judice;*

the law requires his presence during each and every step. (*Meridith v. People*, 84 Ill. 479; *O'Brien v. People*, [Col.], 31 Pac. Rep. 230).

We concede the correctness of the proposition of counsel "that a judge has power to adjourn his court from time to time, and nothing that he does in the interval can have the effect of depriving him of the power of holding his court when the recess expires;" that proposition is not involved here. It is not necessary to review authorities to show that Judge Scott, when he returned to Oklahoma City on December 26, might have resumed business and taken up any other matters then pending in his court. We concede this and we concede that the presiding judge need not sit at his bench or remain in a court room while a jury are deliberating of a verdict. He may take a recess or adjourn as to all other business from day to day, or for rest or refreshment, but he cannot suspend the functions of the court as to the case of which the jury are deliberating. He need not remain actually on the bench or in the court room, but he must remain where he may exercise his functions as a court; that is, at the place where the court is by law required to be held, He cannot be at another place or engage in another business which precludes the exercise of such functions. Section 5242 of our statutes, Laws of 1893, provides:

"While the jury are absent the court may adjourn from time to time as to other business, but it is nevertheless deemed open for every purpose connected with the cause submitted to them, until a verdict is rendered or the jury discharged."

The court cannot be adjourned or its functions suspended as to the cause submitted to the jury. It is constructively open even though the judge be resting or refreshing himself; but to be constructively open the

51—v.

judge must be at the place where the law requires it to be kept open. If the judge should die after a cause was submitted to a jury, we do not think a verdict could be returned by the jury after a successor had been appointed and assumed the functions of the court. The death of the judge would render the jury, as to the cause, *functus officio*; and absence from the place where, by law, the court is required to be held, or other cause which dissolved the organization of the court, or suspended or prevented the exercise of its functions, would have the same effect as the death of the judge. The termination of the court by operation of law destroys the power of the jury to exist as a part of the court and discharges the jury. (*State v. Jeffers*, 64 Mo. 376). With the termination of the court the jury is discharged by operation of law and it can then neither make nor return a verdict. (*Anderson v. Hullett*, 36 Pac. Rep. 309).

This court takes judicial knowledge that Oklahoma county is in the Third judicial district; that the district is composed of the counties of Oklahoma, Cleveland and Pottawatomie; that Hon. Henry W. Scott was the presiding judge of said district. There is but one district court and one district judge in the district. Courts cannot be held in two counties in the same district simultaneously; (*In re Mellington*, 24 Kan. 214; *In re Dossett*, 37 Pac. Rep. 1071.) A court cannot be actually in session in one county and constructively in session in another at the same time. When the district court of Cleveland county was open and transacting business on December 24, 1895, it was not and could not be open for any purpose in Oklahoma county at the same time. The action of the judge in leaving the place where the court could be held for the trial of the cause, suspended the functions of the court in the cause to the substantial

prejudice of the defendant; closed the court in violation of the statute, which required it to be kept open until the jury had returned a verdict or until they should be discharged, and thereby, by operation of law, discharged the jury and, in our opinion, all the subsequent proceedings in the cause were *coram non judice*, and void.

It follows that petitioner is unlawfully imprisoned under said judgment. It is therefore ordered that the petitioner be discharged from said judgment and commitment and that he be remanded to the custody of the respondent to abide the further action of the district court in the cause wherein said judgment was rendered.

Dale, C. J., Bierer, J., McAtee, J., and Keaton, J., agree to the conclusion that the petitioner should be discharged, holding to the view that when Judge Scott left Oklahoma county and went to Cleveland county and opened court there, such action dissolved the court in Oklahoma county. Upon the other questions decided we fully concur in the opinion.