## C. G. WITTE v. STATE.

No. A-5340.   Opinion Filed Oct. 16, 1926.
(249 Pac. 968.)

C. Guy Cutlip, Thos. J. Horsley, Kitty C. Sturdevant and Lydick & McPherren, for plaintiff in error.

Geo. F. Short, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for the State.

EDWARDS, J. The plaintiff in error, hereinafter called defendant, was convicted in the district court of Hughes county on a charge of grand larceny in borrowing from a bank while a director and active managing officer, and was sentenced to a term of five years in the state penitentiary.

The information alleges in substance that the defendant was on October 24, 1923, the active managing officer of the Stuart State Bank; that he executed, payable to said bank, his note in the sum of $1,133.84, and did thereby accept, receive and borrow said sum. The charging part of the information is as follows:

"* * * C. G. Witte, being then and there a director and active managing officer of the Stuart State Bank, of Stuart, Okla., a banking corporation, organized and existing under the laws of the state of Oklahoma and engaged in transacting a general banking business at Stuart, Hughes county, Okla., did in Hughes county, state of Oklahoma, on the date above-named, while acting as such active managing officer of said Stuart State Bank, of Stuart, Okla., unlawfully, willfully, fraudulently, stealthily, and feloniously accept, receive, and borrow, from the said Stuart State Bank, of Stuart, Okla., the sum of eleven hundred thirty-three and 84/100 ($1,133.84) dollars, good and lawful money of the United States of America, and of the value of eleven hundred thirty-three and 84/100 ($1,133.84) dollars, the property of the said Stuart State Bank of Stuart, Hughes county, Okla., on one certain note, dated October 24, 1923, due and payable to the order of Stuart State Bank, Stuart, Okla., on the 15th day of Novem-

ber, 1924, in the sum of eleven hundred thirty-three and 84/100 ($1,133.84) dollars, and signed and executed by the said defendant, C. G. Witte; and said note being so executed by the said C. G. Witte was then and there by the said defendant, C. G. Witte, unlawfully, willfully, feloniously and stealthily placed among the assets of said bank as a part thereof, and on said note and by means thereof the said defendant, C. G. Witte, did, in Hughes county, state of Oklahoma, on or about the 24th day of October, 1923, unlawfully, willfully, fraudulently, stealthily, and feloniously receive, accept, and borrow thereon from the said Stuart State Bank, of Stuart, Okla., of which said bank the defendant, C. G. Witte, was then and there the active managing officer, the said sum of eleven hundred thirty-three and 84/100 ($1,133.84) dollars, good and lawful money of the United States of America, and of the value of $1,133.84, the personal property of the said Stuart State Bank of Stuart, Okla. * * *"

The prosecution is based on section 4127, Comp. Stat. 1921, as amended by section 1, c. 137, Session Laws 1923, which, as amended, reads:

"It shall be unlawful for any active managing officer of any bank organized or existing under the laws of Oklahoma to borrow, directly or indirectly, money from the bank with which he is connected; and the officer making or authorizing a loan to any person, as well as the person receiving the same, shall be deemed guilty of the larceny of the amount borrowed and shall be punished by imprisonment in the penitentiary for not less than five (5) years nor more than fifteen (15) years."

The record discloses a state of facts about as follows: Prior to October 20, defendant was president and manager of the Stuart State Bank. On that date, as shown by minute book, a directors' meeting was held, defendant tendered his resignation of the office of president and manager, which was accepted, effective at once. M. L. Smith was at the same time elected

president and D. M. Rogers employed as cashier and manager, under the supervision of the president, to assume his duties on October 27. Defendant continued a director and remained in the bank. Rogers, the newly elected cashier and manager, came to the bank on October 24th, and defendant continued there until the 27th to acquaint Rogers with the condition of the bank, and during this time virtually managed its affairs, signed checks and drafts, and received salary.

Prior to this time, J. R. Boyett, vice president of the bank, had purchased a tract of land from C. L. Bell. The defendant had a half interest in this purchase. Boyett and defendant had given their note to Bell in the sum of $2,050, which note had been transferred by Bell to Elwood and Chastain. On the 23d or 24th of October, Elwood and Chastain insisted that Boyett take up the Bell note. Boyett then required defendant to make a note for one-half of the Bell note, with accumulated interest, held by Elwood and Chastain, which one-half amounted to $1,133.84. Defendant thereupon made and signed a note payable to the Stuart State Bank in the sum of $1,133.84, representing the half interest owed by him in the Bell note, and, according to his testimony, delivered this note to Boyett. Boyett also executed to the bank his note for one-half the Bell note. On the same afternoon there appeared in the note case at the bank the said note of defendant. Elwood and Chastain received credit on the books of the bank for the amount of the note.

It is first contended that the information is insufficient in that it fails to allege the general elements of larceny as defined in section 2101, Comp. Stat. 1921, but charges only the elements contained in section 4127, Comp. Stat. 1921, as amended by section 1, c. 137, Session Laws 1923. The offense charged is the

special larceny defined by section 4127, as amended, and the elements of the general larceny statute were properly omitted. Appelget v. State, 33 Okla. Cr. 136, 243 P. 255.

Complaint is next made that after the jury had been impaneled and sworn the trial judge went from Hughes county to Seminole county and transacted official business, and that the court thereby lost jurisdiction of the case, citing In re Patswald, 5 Okla. 789, 50 P. 139. The record shows that after the jury was impaneled and sworn, before any evidence was offered, the trial judge, on account of an urgent matter requiring his presence in Seminole county, had the jury held in charge of the bailiff and was gone from Hughes county some two or three hours. The trial was not in progress during the absence of the trial judge. The proceedings were clearly within the law as announced in Cochran v. State, 4 Okla. Cr. 380, 111 P. 974, and Stites v. State, 9 Okla. Cr. 596, 132 P. 822. No proceedings whatever were had during the absence of the judge, the jury were not engaged in deliberating and the case had not finally been submitted to them. Under such state of facts, the contention made is no longer an open question. In Ex parte Mingle, 2 Okla. Cr. 708, 104 P. 68, it was held:

"Upon an agreed statement of facts, showing that during the progress of the trial the trial judge at divers times during adjournments before the final submission of the case to the jury left Oklahoma county and went to Canadian county, but was present the entire time the jury were deliberating of their verdict, held, that the absence of the trial judge during the adjournments could in no way affect the legality of the proceedings, and did not deprive the court of the power or jurisdiction to render judgment and issue process for the imprisonment of the defendant. In re Patswald, 5 Okla. 789, 50 P. 139, distinguished."

It is next argued that the court erred in giving instruction No. 4, wherein the jury are told that if they find defendant was a director, and in addition stayed in said bank assisting in operating and running it on the 24th of October, that he was an active managing officer within the meaning of the law. It is urged that a director is not an active managing officer of a bank, and that the undisputed evidence is that the defendant had resigned on October 20th and Smith elected president. The record shows that defendant was a director of the bank at the time the note in question was taken into the assets of the bank, and that while his resignation had been filed and accepted, it was in fact in abeyance, and he continued in the bank, assisting actively in conducting its operations until October 27. In the case of Eubank v. Bryan County State Bank, 216 F. 833, 133 C. C. A. 37, wherein section 4127, Comp. Stat. 1921 (section 270, Rev. St. 1910), was under consideration, in syllabus 1 it was held:

" * * * Held, that a director of a bank is an 'active managing officer' within the meaning of section 270, and cannot be relieved from responsibility as such by any action of the other directors, and consequently that a loan of money made by the bank to him is illegal. * * * "

On page 838 of said opinion (133 C. C. A. 42), we find the following language:

" * * * If the duties of Dunlap as one of the managers of the bank depended alone upon the fact that he was its president, it may be that the board of directors might prescribe and limit his duties, a question that need not now be determined, for section 262 of the Oklahoma statute (Rev. Laws 1910) imposes upon the directors of the bank, of which Dunlap was one, the positive duty of its management and control. His duties as one of the managers of the bank arose therefore from the fact that he was one of its directors, and not

alone from the fact that he was its president; and these duties we think cannot be restricted or limited by any action of the board of directors."

The Supreme Court of the state, in a case growing out of the same transaction, cited in Eubank v. Bryan County State Bank, supra, in the case of Bryan County State Bank et al. v. American National Bank, etc., 56 Okla. 529, 156 P. 352, said:

" * * * It is clear that one of the main purposes of the banking laws in the state of Oklahoma is to impose upon the officers of the bank, such as the president or director, the positive duty of its management and control and to fix upon these officers the duty and responsibility of conducting said bank in accordance with law, and this court should be slow to adopt any construction of law which would relieve these officers from their responsibility. * * * "

Instruction No. 4 is not erroneous. It follows the language of the information and required defendant must have remained in the bank assisting in its operations and in the transaction of its business in order to constitute him an active managing officer.

Under the general rule that statutes defining crimes and fixing criminal responsibility are not to be enlarged by construction, we believe that section 4127, supra, does not apply to a director, merely. It is true that the board of directors of a bank are the final managing and controlling body. Section 4119, Comp. Stat. 1921. This statute, however, does not make the individual director a managing officer. The directors act not as individuals, but as a board in a supervisory capacity over the officers who manage. The individual director may or may not be an active managing officer. It is difficult to give a strict legal definition to the term "active managing officer." A director is an officer who with other directors constitutes a board having general

control over the officers and affairs of the bank. The statute, however, does not apply to an officer, but a certain class of officer—i. e., active managing officer. A mere director is not an active managing officer as the term is therein used, but in order to bring a director within the terms of the statute he must also be actively conducting and managing in some measure the affairs of the bank. That is, that the term "active managing officer" means what the language clearly expresses— one having control of the detail affairs of the bank, the approving of loans, the extension of credit, and the conducting of its routine business. The liability mentioned in the cases of Eubank v. Bryan County State Bank, supra, and Bryan County State Bank et al. v. American National Bank, etc., supra, deals with the civil liability of a director and not with his liability under the criminal statutes. In the case at bar, if the state had proven merely that defendant was a director and had stopped there, the proof would have been insufficient, but the information alleges and the proof shows that, in addition to being a director, the defendant was active in the management of the bank's affairs and an active managing officer as provided by section 4127, supra.

Complaint is made of other of the court's instructions and of other errors, but none of them are prejudicially erroneous or require discussion.

The case is therefore affirmed.

BESSEY, P. J., and DOYLE, J., concur.