## JOHNIE RAAB v. STATE.

No. A-9178.  Sept. 10, 1937.

(71 Pac. 2d 773.)

Cornelius Hardy, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and W. D. French, Co. Atty., for the State.

BAREFOOT, J.   The defendant was charged with the crime of manslaughter in the first degree, was tried and convicted of manslaughter in the second degree, and sentenced to serve a term of two years in the penitentiary, and has properly appealed to this court.

From the conclusion we have reached it will only be necessary to consider two of the many errors urged for reversal.   In the consideration of these errors it will be unnecessary to review the evidence.   When all of the testimony had been received, the instructions of the court given to the jury, argument of counsel, and the case finally submitted to the jury for its consideration, they

were told by the court that if they reached a verdict it might be signed and sealed and delivered to the bailiff and that they could then separate if they so desired. This was on the evening of the 20th day of March, 1936. The trial court, while the jury was thus deliberating, left Johnston county and went to his home in Marietta, Love county. The record does not show for what purpose the trial court left Johnston county and went to Love county. This court will, however, take judicial knowledge that Johnston and Love counties are in the same judicial district. The record discloses that on the 21st day of March the trial judge received a telephone call while he was in Marietta, Love county, from the foreman of the jury in Johnston county, and the record reveals the following proceedings with reference thereto:

"By the Court: You are hung up, are you, Mr. Penner? Mr. Penner: Yes, sir, on some matters we are. By the Court: Give me the numbers, not how you stand, as to how many is for conviction or acquittal, if any, just the division only. Mr. Penner: It is not on conviction or acquittal. By the Court: If it is on the question of punishment you are hung up on, go back to your jury room and labor some more, I will be over there some time this afternoon; that is a question you must settle among yourselves."

It is further disclosed that in the motion for new trial and the motion in arrest of judgment filed by the defendant no reference is made as to the errors above mentioned, and the question is raised for the first time in this court. But the record does include what transpired as above stated. Thus the two questions are raised:

First, was the action of the court in leaving Johnston county after the case had been finally submitted to the jury, error?

And, second, was the conversation between the foreman of the jury and the court, over the telephone, when neither the defendant nor his counsel were present and, not notified thereof, such error as to justify a reversal of this case?

The state, in its brief, says:

"We do not consider it necessary to discuss the cases cited in support of defendant's contention, or the other decisions of this court, because none of them are in point upon this question. In fact, we have been able to find only two cases in the United States which are in point. Both cases are from Georgia."

We shall refer to these cases later in this opinion. We think that two cases which have been decided by this court, and one from the territorial court, are strongly in point upon the issues involved and are practically decisive thereof. They are: In re Patswald, 5 Okla. 789, 50 Pac. 139, 143; Ex parte Mingle, 2 Okla. Cr. 708, 104 Pac. 68, 71; and Allen v. State, 13 Okla. Cr. 533, 165 Pac. 745, 746, L. R. A. 1917A, 1085.

In the Patswald Case, the defendant was tried in the district court of Oklahoma county, and after the case was closed and the jury was deliberating upon its verdict the trial court left Oklahoma county and went to Cleveland county and held an adjourned term of court there, and returned to Oklahoma county two days later and received the verdict of the jury in the case which was pending in that court. Judge Tarsney of the territorial court held that by reason of the trial judge leaving the county while the jury was deliberating upon their verdict terminated the case by operation of law, and that in his absence the jury had no authority to consider the case, and that the jurisdiction of the court having been suspended could not

be resumed by the return of the judge, and that the verdict returned and the judgment rendered therein were coram non judice and void. It will be noted that the court took judicial knowledge that Oklahoma and Cleveland counties were in the same judicial district. The only difference between the above case and the case at bar is that an adjourned term of court was opened for two days in Cleveland county in the Patswald Case, and the record here does not reveal the reason for the court going to Marietta, Love county, from the seat of the trial in Johnston county. The court, in a very full discussion of this case, said:

"No person can be lawfully deprived of his liberty except 'by due process of law.' Due process of law would in this case imply, upon a conviction by a court of competent jurisdiction. A court of competent jurisdiction for the trial of the crime of perjury consists of a presiding judge and jury. It is not a court unless there be both judge and jury. It is the very existence and vitality of the court which authorizes the jury to deliberate. It is the existence and authority of the court which keeps them together, and that existence and authority must continue from the time they are impaneled until they are discharged. Barrett v. State, 1 Wis. 175. For all general purposes, the court is considered as in session from the commencement until the close of its term. The jurors, officers, and parties are all under its direction. The functions of the court cannot be suspended, and the functions of the jury continue. To hold the contrary would be to throw off all those salutary restraints which have been found necessary to the due and solemn administration of justice. The jury are under the control and protection of the court. A juror may be punished for misconduct as for contempt. If an officer having charge of a jury should desert his post, or tamper with the jury, he would be punishable as for contempt. If the room in which the jury are deliberating be surrounded by rioters or tumultuous persons,

for the purpose of influencing their deliberations or interrupting their discussions, such persons would be punishable for contempt of court. The jury may, while deliberating, properly require of the court additional instructions as to the law of the case, or require of the court explanation of the meaning of the instructions given. They may, in the presence of the court, and by permission of the court, have their memories refreshed as to the testimony in the case. All these privileges and safeguards are in great measure for the protection of the rights of the defendant, and nothing but the existence and presence of the court during every part of the proceedings of his trial can insure them to him. The rioter, the juror, or the officer could not be punished for contempt if there was no court in existence when their acts of misconduct were committed; and the jury could not have the benefit of additional instruction or refreshment of memory as to evidence if there was no court at the time in actual existence to assist them. The presence, actual or constructive, of a judge at every stage of the proceedings in a court, is necessary, or the proceedings will be coram non judice. The law requires his presence during each and every step. Meredeth v. People, 84 Ill. 479; O'Brien v. People [17 Colo. 561] 31 Pac. 230.

"We concede the correctness of the proposition of counsel 'that a judge has power to adjourn his court from time to time, and nothing that he does in the interval can have the effect of depriving him of the power of holding his court when the recess expires.' That proposition is not involved here. It is not necessary to review authorities to show that Judge Scott, when he returned to Oklahoma City on December 26th, might have resumed business and taken up any other matters then pending in his court. We concede this and we concede that the presiding judge need not sit at his bench or remain in a court room while a jury are deliberating on a verdict. He may make a recess, or adjourn as to all other business from day to day or for rest or refreshment, but he cannot suspend the functions of the court as to the case of which

the jury are deliberating. He need not remain actually on the bench or in the court room, but he must remain where he may exercise his functions as a court; that is, at the place where the court is by law required to be held. He cannot be at another place, or engage in other business which precludes the exercise of such functions.

"Section 5242 of our statutes (Stat. 1893 [22 Okla. St. Ann. § 898]) provides: 'While the jury are absent the court may adjourn from time to time as to other business, but it is nevertheless deemed open for every purpose connected with the cause submitted to them, until a verdict is rendered or the jury discharged.'

"The court cannot be adjourned or its functions suspended, as to the cause submitted to the jury. It is constructively open even though the judge be resting or refreshing himself; but, to be constructively open, the judge must be at the place where the law requires it to be kept open. If the judge should die after a cause was submitted to a jury, we do not think a verdict could be returned by the jury after a successor had been appointed, and assumed the functions of the court. The death of the judge would render the jury, as to the cause, functus officio; and absence from the place where by law the court is required to be held, or other cause which dissolved the organization of the court, or suspended or prevented the exercise of its functions, would have the same effect as the death of the judge. The termination of the court by operation of law destroys the power of the jury to exist as a part of the court, and discharges the jury. State v. Jeffors, 64 Mo. 376. With the termination of the court the jury is discharged by operation of law, and it can then neither make nor return a verdict. Anderson v. Hulet [4 Colo. App. 448] 36 Pac. 309."

In the Mingle Case, supra, the defendant was being tried in Oklahoma county and the trial judge, who lived in Canadian county, during the progress of the trial and after adjourning court each evening, went to his home in Canadian county. Judge Doyle held that this was proper

and was not error, but the agreed statement of facts in this case not only shows that there was no session of court in Canadian county during the progress of this trial, but during the entire time the jury was deliberating in the above-cited case the judge of the district court was present and could have been reached by the jury at any time they desired his presence. And the court in its opinion says:

"The fact that the trial judge visited his home within the district during adjournments prior to the final submission of the case to the jury could in no way affect the legality of the proceedings. The presence of the trial judge was not essential during the adjournments."

It will thus be seen that the court based his opinion upon the fact that the judge was away only "prior to the final submission of the case to the jury," and further quotes freely from the Patswald Case, and says: "The holding of the Territorial Supreme Court in that case meets the approval of this court." He then draws the distinction that under the terms of the State Constitution two judges have the right to sit in any district separately at the same time, but clearly draws the distinction that a judge does not have the right to leave the county after the case has been finally submitted to the jury.

In the Allen Case, supra, the opinion was also written by Judge Doyle. In this case the defendant was being tried for murder in Payne county. Immediately after the case was finally submitted to the jury, the trial judge became seriously ill and, by agreement of counsel on both sides, returned to his home in Logan county. It was agreed and consented to by attorneys on both sides that Robert A. Lowery, an attorney at the bar in Payne county, should act as special judge for the purpose of receiving the verdict of the jury. On the following morning the jury came into court with their verdict and the same

was received by Mr. Lowery and delivered to the court clerk as agreed. In reversing this case, the court says:

"Under these provisions, after the retirement of the jury to deliberate and until a verdict is rendered, or the jury discharged in due course of the law, it is the duty of the presiding judge to be where he can respond to any call for the exercise of his judicial authority, and thus give protection and security to all parties interested or concerned in the result of the trial, and such judge cannot delegate these judicial functions to another, even with the consent of the parties. It is well settled that in prosecutions for felonies the continual presence of the judge during the entire course of the trial is indispensable, and that whether objection be or be not made, a conviction will be reversed in the case of his improper absence." Meredeth v. People, 84 Ill. 479, 2 Am. Cr. Rep. 448; Ellerbe v. State, 75 Miss. 522, 22 So. 950, 41 L. R. A. 569.

The cases cited in the brief of the state from the State of Georgia are Martin v. State, 10 Ga. App. 455, 73 S. E. 686, and Malcolm Bros. v. Pollock, 181 Ga. 687, 183 S. E. 917, 922. It is contended by the state that the Martin Case cannot be considered as an authority in view of the later decision of Malcolm Bros. v. Pollock. We have carefully read each of these decisions. The Martin Case is a criminal case. The facts are practically identical with the case at bar. The judge went to an adjoining county after the case was finally submitted to the jury, for the purpose of granting a charter to some company. The court, in this opinion, said:

"It is not apparent that the defendant in the present case was hurt by the absence of the judge. The testimony adduced on the trial fully authorized the conviction of the defendant, and there is no evidence that the verdict was affected by any improper influence or contract on the part of bystanders or others, or that they knew that the judge was absent from the county, or that their find-

ing was in any way affected by that fact. It is naturally suggested that the trial had progressed so far that the presence of the judge was no longer necessary until the jury might return into court, and that, as it was not necessary that the judge should remain at the courthouse until he was notified that the jury desired to return a verdict, it could not matter if, in the judge's desire to perform other duties of importance in an adjoining county, he should go there, instead of remaining at his hotel or some other house, within reach of the jury. It was no doubt upon the latter theory that the learned trial judge acted, and the recital of the assignment of error evidences his diligence in the discharge of his judicial duties.

"However, as a criminal trial is not completed until the verdict has been rendered, the question which really arises is whether it is not necessary, in order to preserve unimpaired the right of trial by jury, that injury be presumed from the violation of any of those orderly rules which safeguard the right. It seems to us that injury is to be presumed, in so important a matter as trial by jury, even in the absence of proof to that effect, where injury is likely to result from an infraction of a general rule, and especially such an important one as that which looks to the present personal supervision and control of the presiding judge as an essential sine qua non of a legal trial. There can be no trial without a judge. The case must be tried in Decatur county. Naturally we conclude that when the judge left Decatur county, and went to Grady county to open a special court to grant a charter in that county, the court ceased, for the time being at least, to exist in Decatur county, and that all that was done during the absence of the judge was nugatory and void. A temporary absence of the judge, such as has been referred to in the cases cited above, involved his presence at a point where he was easily accessible to the parties, counsel, officers of court, and the jury. Where the judge is within call of the jury and physically absent, but at a place so near by that he can easily return, if needed, he may be presumed to be constructively present at the court-

house; but this presumption cannot be indulged when the judge goes to a place beyond the jurisdiction of the court in which the trial is being had. Where the judge is not only physically out of the presence of the jury, but also absent in a legal sense, and at such a point as to be beyond the reach of the other essential component, but subordinate parts of the court, which should be subjected to his supervision, the court is necessarily dissolved pro tempore, at least so far as the trial first pending is concerned."

The case of Malcolm Bros. v. Pollock was a civil case. Counsel for both the plaintiff and defendant agreed not only for the judge to leave the county after the case had been finally submitted to the jury, but consented that they might seal their verdict and turn it over to the sheriff, and on the following morning the sheriff having been handed the verdict by the jury, passed the same to the court clerk, and it was never received in open court by the judge. Under this state of facts the Supreme Court of Georgia held, in answering two questions certified to them from the Court of Appeals, that the fact that the judge went into an adjoining county after the case had been submitted to the jury did not vitiate the verdict. The reasons given in the opinion are based mostly upon expediency, and a statute (Code Ga. 1933, § 110-107) which provides:

"Verdicts shall be received only in open court, in the absence of agreement of the parties."

And the court says this section is specific authority for receiving verdicts by agreement otherwise than in open court. The court then holds that the fact that the judge went into an adjoining county while the jury were deliberating was not error where no prejudice was shown, but as in every decision we have read, the practice was condemned. It may also be noted that in this case there

was a strong written dissenting opinion by the Chief Justice and concurred in by one of the six judges of the Supreme Court of Georgia. Chief Justice Russell in his dissenting opinion says:

"I have always adopted as my view on this subject that portion of the opinion in the Horne Case [Horne v. Rogers, 110 Ga. 362, 35 S. E. 715, 49 L. R. A. 176], that we should hold that the presence of the judge at all stages of the trial is absolutely necessary to its validity, and that the absence of the judge from the trial without suspending the same, for any length of time, no matter how short, or for any purpose, however urgent, would vitiate the whole proceeding, whether objection was made by the parties interested or not, and whether injury resulted to any one or not. The judge is such a necessary part of the court that his absence destroys the existence of the tribunal, and public policy demands that the tribunal authorized to pass upon the life, liberty, and property of the citizens should be constituted during the entire trial in the manner prescribed by law. The great weight of authority is in harmony with this view."

The second question presented has in different forms been before this court many times. Among the leading cases in which this question has been considered are: Ridley v. State, 5 Okla. Cr. 522, 523, 115 Pac. 628, 629; Watson v. State, 7 Okla. Cr. 508, 124 Pac. 329, 330; Selstrom v. State, 7 Okla. Cr. 345, 123 Pac. 557, 559; Thomas v. State, 13 Okla. Cr. 414, 164 Pac. 995; Henderson v. State, 18 Okla. Cr. 611, 197 Pac. 720; Montgomery v. State, 19 Okla. Cr. 224, 199 Pac. 222; Walter v. State, 29 Okla. Cr. 221, 233 Pac. 240; Bennett v. State, 42 Okla. Cr. 264, 275 Pac. 390; Grable v. State, 60 Okla. Cr. 339, 44 Pac. (2d) 152. The decisions in the Ridley and the Watson Cases have often been followed by this court and we think state the law as it should be. The Montgomery Case approves the doctrine announced in those cases and con-

demns the statement of the trial court but affirms the decision. We think the statement made in that case should not have been made and probably resulted in a verdict of guilty. The decision in the Walter Case referred to the Ridley and Watson Cases but does not follow them, holding that the harmless error doctrine which was enacted by the Legislature of this state after the decisions in those cases should be applied, and the case was affirmed for this reason. We do not approve of the doctrine announced in the Walter Case, and the same, so far as it conflicts with this decision, is overruled. The other cases above cited follow the rule announced in the Ridley and Watson Cases. In the Ridley Case the court says:

"The eleventh assignment alleges misconduct of the jury and clerk of the county court, as set forth by affidavits in support of the motion for a new trial, which are not controverted. It appears from said affidavits that while the jury were deliberating upon the verdict some member of the jury knocked on the door of the jury room, and when it was opened a member of the jury spoke to T. B. Wilkinson, the clerk of the court, and said, 'Five of us agree; do we have to sign it?' and said clerk answered, and said, 'The five that had agreed had to sign it.' That thereupon the door to said jury room was closed, and after a short while the jury returned into court with a verdict signed by five jurors.

"Our statutes provide (section 6858, Snyder's St. [Okla. St. 1931, section 3085; 22 Okla. St. Ann., section 857]) : 'After hearing the charge, the jury may either decide in court, or may retire for deliberation. If they do not agree without retiring, one or more officers must be sworn to keep them together in some private and convenient place, without food or drink, except bread and water, unless otherwise ordered by the court, and not to permit any person to speak to or communicate with them, nor do so themselves, unless it be by order of the court, or to ask them whether they have agreed upon a verdict, and

to return them into court when they have so agreed, or when ordered by the court.'

"And (section 6865, Snyder's St. [Okla. St. 1931, section 3085; 22 Okla. St. Ann., section 894]): 'After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony, or if they desire to be informed on a point of law arising in the cause, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to the county attorney and the defendant or his counsel, or after they have been called.'

"The question presented is whether such misconduct is sufficient to require the court to set the verdict aside and grant a new trial. It is of the utmost importance that jurors and court officials should be held to a strict observance of the provisions of law prescribing their procedure and duties, and their conduct should be such that no possible suspicion can attach to them of having acted in a manner prejudicial to the accused, or in his favor. If there was a disagreement between them, or if they were doubtful as to how they should proceed, they should have required the officer in charge to conduct them into court, and the necessary information would be given by the court in the presence of the parties. It will be presumed, in the absence of anything to the contrary, that the rights of the defendant were prejudiced by the action of the jury and clerk of the court in disregarding and failing to observe the requirements of the statute. Courts cannot be too strict in compelling a rigid and vigilant observance of the provisions of the statutes designed to preserve inviolate the right of trial by jury and the purity of jury trials. We deem it unnecessary to consider the other assignments."

In the Watson Case, the Attorney General filed a confession of error. The court, after quoting from the Ridley Case and approving the same, said:

"We think that the confession of error filed by the Attorney General should be sustained. The case illustrates the fact that the wisest and best judge, when acting on the spur of the moment during a trial, sometimes makes a mistake. The judgment of the lower court is reversed, and the cause is remanded for a new trial."

Not only do the Oklahoma cases uphold this doctrine, but the generally accepted view is that it is reversible error for the trial judge in a criminal case to communicate with the jury or any member thereof, except in open court and in the presence of the defendant and his counsel; the basis of such ruling being that the accused shall have the right of a public trial and the right to be present during all stages thereof. There are some decisions which hold that it is necessary to show prejudicial error, but many of these cases are civil cases, and many of them are based upon peculiar statutes different from what we have in Oklahoma. The oldest and one relied upon by many authorities in establishing this principle was the case of Sargent v. Roberts, 1 Pick. (Mass.) 337, 11 Am. Dec. 185. The court says:

"And we are all of opinion, after considering the question maturely, that no communication whatever ought to take place between the judge and the jury, after the cause has been committed to them by the charge of the judge, unless in open court, and, where practicable, in presence of the counsel in the cause. The oath administered to the officer seems to indicate this as the proper course: 'He is to suffer no person to speak to them, nor to speak to them himself unless to ask them whether they are agreed'; and he is not to suffer them to separate until they are agreed, unless by order of court. When the court is adjourned, the judge carries no power with him to his lodgings, and has no more authority over the jury than any other person; and any direction to them from him, either verbal or in writing, is improper.

"It is not sufficient to say that this power is in hands highly responsible for the proper exercise of it; the only sure way to prevent all jealousies and suspicions, is to consider the judge as having no control whatever over the case, except in open court in presence of the parties and their counsel. The public interest requires that litigating parties should have nothing to complain of or suspect in the administration of justice, and the convenience of jurors is of small consideration compared with this great object. If by reason of the long intervals between the sessions of the court, jurors here are subjected to inconveniences which do not exist, elsewhere, this must be remedied by holding two sessions a day instead of one. It is better that everybody should suffer inconvenience, than that a practice should be continued which is capable of abuse, or at least of being the ground of uneasiness and jealousy."

In the case of Little v. U. S., 73 F. (2d) 861, 864, 96 A. L. R. 889, Judge McDermott, of the Tenth Circuit Court of Appeals, says:

"But sending a stenographer into the jury room, there to read, in the absence of the defendant and his counsel, the charge of the court, stands in very different stead. No harm may come from it, it is true; but on the other hand, a mistake in the reading of a shorthand symbol which defense counsel would instantly detect, an unconcious or deliberate emphasis or lack of it, an innocent attempt to explain the meaning of a word or a phrase, and many other events which might readily occur, would result in irremediable prejudice to the defendant. Underneath that phase of it lies the proposition that no one should be with a jury while it is engaged in its deliberations. The jury system is founded upon the proposition that disinterested jurors will hear the evidence in open court, and upon that evidence and that alone, deliberate among themselves until a verdict is reached. Southern Pacific Co. v. Klinge (C. C. A. 10) 65 F. (2d) 85, certiorari denied 290 U. S. 657, 54 S. Ct. 72, 78 L. Ed. 569.

To permit various persons, under one pretext or another, to be with the jury in its deliberations is to open the door to grave abuse and to strike directly at the heart of the system. Without exception, as far as we are advised, such procedure has been held to be error. * * * Nor should there be any communication between the court and the jury except in open court. Fillippon v. Albion Vein Slate Co., 250 U. S. 76, 81, 39 S. Ct. 435, 63 L. Ed. 853; Dodge v. United States (C. C. A. 2) 258 F. 300; Sargent v. Roberts, 1 Pick. (Mass.) 337, 11 Am. Dec. 185; Moseley v. Washburn, 165 Mass. 417, 43 N. E. 182; Whitney v. Commonwealth, 190 Mass. 31, 77 N. E. 516; State v. Costales, 37 N. M. 115, 19 Pac. (2d) 189; Buntin v. Danville, 93 Va. 200, 24 S. E. 830.

"The District Attorney very properly concedes the rule to be so. His answer is that the error does not require a reversal and directs attention to the cases last cited, in some of which it was held that where the communication was in writing and unchallenged, a judgment need not be reversed if it affirmatively appears that the communication was harmless. But where an outsider is present in the jury room during its deliberations, a different situation is presented. What went on cannot be determined by examining an undisputed writing, but can only be ascertained by exploring the deliberations of the jury room, a procedure adopted only in extreme cases and then reluctantly."

In the case of State v. Wroth, 15 Wash. 621, 47 Pac. 106, 107, the court says:

"It is contended by the appellant's counsel that this constituted such misconduct on the part of the trial judge as requires a reversal, and we think the contention must be sustained. In the discharge of his official duty, the place for the judge is on the bench. As to him, the law has closed the portals of the jury room, and he may not enter. The appellant was not obliged to follow the judge to the jury room in order to protect his legal rights, or to see that the jury was not influenced by the presence

of the judge; and the state cannot be permitted to show what occurred between the judge and the jury at a place where the judge had no right to be, and in regard to which no official record could be made.

"But learned counsel for the state insist that the judge said nothing to the jury, and hence his conduct could not have been prejudicial to the defendant. But the law does not subject parties litigant to the disadvantage of being required to accept the statement of even the judge as to what occurs between himself and the jury at a place where the judge has no right to be, and where litigants cannot be required to attend. It is the lawful right of a party to have his cause tried in open court, with opportunity to be present and heard in respect to everything transacted. It is his right to be present and attended by counsel whenever it is found necessary or desirable for the court to communicate with the jury, and he is not required to depend upon the memory or sense of fairness of the judge as to what occurs between the judge and jury at any time or place when he has no lawful right to be present. His right in this respect goes to the very substance of trial by jury. Aside from the rights of the parties, public policy will not sanction any departure from the rule which requires that all such communications shall be public, and in the presence of the parties or their counsel."

In the case of Osborne v. State, 93 Tex. Cr. R. 54, 245 S. W. 928, 931, the court says:

"And it may be added that in no event should the trial judge enter the room in which the jury is engaged in their deliberations for the purpose of discussing the charge or any phase of the case or permitting any of the members of the jury to do so. To the jury, not only the language of the judge trying the case, but his manner, is of peculiar weight, and they may place upon it interpretations not intended. The instant case is one of felony, and it is manifest that such conversation as took place between the judge and the members of the jury while he

was in the jury room was not in the presence of the accused. Such statements as were made to the jury were verbal, a method of instruction which the statute forbids."

In the majority of cases it is held that it is not necessary for the defendant to show that he has been prejudiced by the action of the trial court. In the case of Crabtree v. Hagenbaugh, 23 Ill. 289, 76 Am. Dec. 694, the reason for the rule is announced:

"If, in this case, no harm was actually done, and for that reason the verdict is allowed to stand, we open the door to the inquiry in all such cases, as to whether the party has been injured by the interview. Such an inquiry should not be tolerated. The policy of the law requires that all the proceedings of the court should be open and notorious, and in the presence of the party, so that if he is not satisfied with it, he may take exceptions to it, in the mode pointed out by law, and not be put to extraneous proof to show that an error has been committed in a sacred proceeding, and, in fact, out of court." Coolman v. State, 163 Ind. 503, 72 N. E. 568; Wacaster v. State, 172 Ark. 983, 291 S. W. 85; Crabtree v. Hagenbaugh, 23 Ill. 289, 76 Am. Dec. 694; State v. Duvel, 134 A. 283, 4 N. J. Misc. 719; Id., 103 N. J. Law 715, 137 A. 718.

It is useless to cite further authorities to support this proposition. In 17 L. R. A. (N. S.) 609, 22 A. L. R. 261, 62 A. L. R. 1468, and 96 A. L. R. 899, are notes covering every phase of this case and substantiate the statement that the great weight of authority especially in criminal cases supports the principle here announced. The rule is also announced in 38 Cyc. 1859 and in 64 C. J. 1037, and also in 16 Ruling Case Law, pp. 298 and 299.

We realize that this opinion has been extended, but we also recognize that the two questions discussed are extremely important to the practice of criminal law in this state; important to the trial court and the defend-

ant. We know that judges live in counties joining other counties in their judicial district; that with modern roads and by means of automobiles they can, within a short time, be in the county where a case is tried even though they are out of the county; and that it would be much more convenient for them to spend the time while the jury is deliberating, at their own home, or in attending to necessary business in an adjoining county seat. But we also realize that with their election to the position of judges there also come duties and responsibilities, duties which they owe to the defendant on trial, and as we consider it, one of the greatest duties and responsibilities is the right of the defendant to have the judge before whom he is tried personally present to meet any emergency that may arise during the deliberation of his case. Often information is desired by the jury, testimony to be read, or additional instructions to be given. If the judge is not personally present, the jury may, in order not to inconvenience its own members, or not to inconvenience the judge who is away in another county, decide that it will not have the testimony read, or the question asked, or the instruction explained; thus the right of the party being tried will not be fully protected as the law contemplates. We fully realize that there may be times when this rule will result in hardships and inconveniences, especially to the trial judge; but we know they will gladly meet it, for they will be anxious that he who is tried before them, even though he be guilty, may always have the knowledge that during his trial both his rights and that of the state were equally protected by a considerate judge, who was personally present during every important stage of its proceedings and especially while the jury was deliberating his fate.

The record in this case reveals that the trial judge, after submitting the case to the jury, had left Johnston county and had gone to Marietta, in Love county. The next day he was called by the foreman of the jury over the telephone. The record does not reveal where the foreman of the jury was when this conversation took place, but it is very reasonable to presume that there was no telephone in the jury room and in all probability it was necessary for the foreman of the jury to go to some place in order to talk over the telephone. This would probably have necessitated his separation from the jury during this time. The record does not probably disclose all of the conversation between the parties. Jurors are very eager to know what the judge's opinion of the case is and a very little move or indication from him is of tremendous influence. This is the very reason for the rule that any communication by him with the jury while deliberating should be in open court where the defendant and his counsel may be present to protect their rights. The verdict of the jury should not only be decided by the strictest observance of all the well-ordered rules of procedure, but it should be above and beyond suspicion. Of all things most sacred in judicial proceedings, the sanctity of the verdict should be inviolate. This high test is demanded by the statutes of this state above quoted.

It becomes unnecessary for us to pass upon other errors assigned, and for the reasons above stated, the judgment rendered by the district court of Johnston county is reversed.

DAVENPORT, P. J., and DOYLE, J., concur.