ELMER SNIDER v. STATE.

No. A-9719.    Dec. 18, 1940.
(108 P. 2d 552.)

Ryan Kerr, of Oklahoma City, Carroll Moody, of Pauls Valley, and Raymond Barry, of Hollis, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam Lattimore, Asst. Atty. Gen., and Weldon Ferris, Co. Atty., of Altus, for defendant in error.

JONES, J. The defendant, Elmer Snider, was charged in the district court of Jackson county with the offense of forgery in the second degree, was tried, convicted by a jury, and the punishment left to the court. The court thereupon sentenced the defendant to serve a term of five years' imprisonment in the State Penitentiary, and the defendant has appealed to this court.

The information against the defendant reads as follows:

"I, Weldon Ferris, County Attorney of the County of Jackson and State of Oklahoma, duly authorized and empowered by law to inform of offenses committed and triable within said County and State, come now here and give the Court to understand and be informed, that at and within said County and State, on or about the 10th day of January, 1938, and anterior to the filing of this information, Elmer Snider, then and there being, did then and there willfully, unlawfully, wrongfully, fraudulently and feloniously, sell, exchange and deliver to one Grady Blackstone, the owner and operator of the Blackstone Plumbing and Supply Store of Altus, Oklahoma, for the consideration of $18.65, a certain forged, fictitious and counterfeited check in words and figures as follows, to wit:

"Altus, Okla.          1-10-1938          No._____
"The Altus National Bank—Pay to
    —J. H. Ready or Order                        $18.65
      Eighteen and 65/100                        Dollars.
                                    "R. H. Reid, Spl.
"Endorsed: J. H. Ready
          "Elmer Snider"

"and that the said Elmer Snider then and there well knowing the said check, an engagement for the payment of money absolute, to be false and forged, to wit: that the said check which purported to bear the endorsement thereon of J. H. Ready and said endorsement to be the act and deed of one J. H. Ready, was false, forged and fictitious and the endorsement signature of the said J. H. Ready upon said check was not the true and genuine signature of the said J. H. Ready, but was false and forged as the said Elmer Snider then and there well knew, but the said Elmer Snider then and there knowingly, willfully, unlawfully, fraudulently and feloniously made such sale, exchange and delivery with the unlawful, fraudulent, and felonious intent, then and there on the part of him, the said Elmer Snider, to have said check uttered and passed and to cheat and defraud the said Grady Blackstone and R. H. Reid, contrary to the form of the statute in such cases made and provided against the peace and dignity of the State of Oklahoma."

The first proposition presented by the defendant is that the court erred in overruling the motion presented by the defendant for a directed verdict at the close of the state's case. The defendant offered no evidence in his own behalf.

The facts as shown by the evidence introduced by the state, establish that the defendant, Elmer Snider, was a resident of Hollis, in Harmon county, Okla.; that in 1936, he was appointed highway maintenance superintendent by the State Highway Commission, and that he continued to serve as such superintendent until his discharge in March of 1938; that as part of his duties as State Highway maintenance superintendent, he had charge of the division which included the state highways in Jackson, Harmon, and parts of Kiowa, Tillman, and Greer counties; that the office of the defendant during said time was at Altus, in Jackson county, where all of the records and files of the Highway Department for the district were located.

The manner of paying the employees of the said Highway Department in this said district, at that time, consisted of time cards being made out by the foremen of the various road crews or by Elmer Snider, which said time cards were brought into the district office; that at the end of the month, the clerk in the office made out a pay roll sheet from these said time cards whereon was reflected the name of each individual who was supposed to have worked for the month, the number of hours he worked, the rate of pay he was to receive, and then the total. On the extreme right side of said pay roll was a space to be signed by each claimant or workman. On the bottom of each sheet of the pay roll a blank was provided whereby Elmer Snider, as maintenance superintendent, signed and certified under oath that he personally knew that each of the above claimants had worked, and should be paid the amount as designated, and also a place where, as a notary public, the said Elmer Snider certified that each of the above claimants had signed said pay roll and had subscribed to same in his presence, and he signed and attached his seal thereto. These pay rolls were then forwarded by the maintenance superintendent to the highway divisional office at Clinton, Okla., and from there they went to the State Highway Department in Oklahoma City, then to the State Auditor and State Treasurer for payment by state warrants. There was usually some 30 to 60 days' delay from the time the pay rolls were made up until the state warrants thereon were issued and delivered to the workmen. That these state warrants would come back the same route the pay roll traveled by being sent to the divisional highway office, at Clinton, Okla., and then they were either delivered to the state maintenance superintendent, Elmer Snider, in person, when he was in Clinton, or would be mailed or forwarded to him to his office at

Altus, Okla., that the superintendent then distributed the warrants to his workmen.

Many of the highway employees, who disliked to wait the 30 or 60 days before securing their warrants, had adopted the practice, which was common over the state, of borrowing money on their work time during the current month that they had worked. That one R. H. Reid of Altus had a business of lending money to state highway employees by accepting assignments of their work time and discounting their claims 5 per cent. The employee in such case would issue an assignment in favor of the said R. H. Reid in the amount of his wages due and authorize the highway maintenance department to deliver his check to the said R. H. Reid, and authorize Reid to endorse his warrant in the borrower's name and cash the same. Reid kept a full set of books on these transactions. He would advance money based upon lists of employees' names, which would either be signed by the defendant or by the clerk in the highway maintenance office, certifying that said person had actually worked and had money coming to him from the Highway Department. Reid would then issue his personal check, drawn on the Altus National Bank, on his special account therein, payable to the individual employee affected in the respective amount which he had borrowed from Reid on his work time. The defendant was acquainted with this condition, and on several occasions took these applications for loans to Reid's office, and would get Reid's personal check therefor. At the end of the month, the state warrants of the borrowers would then be delivered to Reid, that he might be paid for the money which he advanced, plus the five per cent interest charge he made.

The basis for the particular charge out of which this information was filed was that R. H. Reid had made a

check payable to one J. H. Ready, who was purportedly an employee of the Highway Department for the defendant's district. The proof discloses that J. H. Ready worked under the defendant on the state highways from November of 1936 until July of 1937. That Ready had not worked for the Highway Department from the time of his discharge in July, 1937, to the time of the trial, and was not working in January of 1938, at which time the check was issued by R. H. Reid upon the representation that Ready had work time coming to him for that month.

Ready testified that he did not sign the January pay roll; did not work at that time under Elmer Snider; did not know his name was on the pay roll for that said month until it was called to his attention later by an investigator. That he did not know that R. H. Reid's check, payable to him, was issued, and did not endorse the same or receive any of the money therefrom.

Reid testified that he issued the check in question to J. H. Ready upon the representation that Ready was actually working for the State Highway Department in January of 1938, and that he had work time and money coming to him from the state; that he did not remember just who came to his office with a list of the employees to get the check.

The proof further shows that the defendant, Elmer Snider, had this particular check in his possession and delivered it to the Blackstone Plumbing Company, of which Grady Blackstone was the owner, paid his account to that place and received some money which represented the difference between the Ready check and the account owed by Snider to the plumbing company. The check was paid by the Altus bank upon presentment by Blackstone.

The state introduced the testimony of a handwriting expert, who testified that he had made a comparison of

the admitted handwriting of the defendant with the forged endorsement on the check in question and with the forged endorsement on the state highway pay roll for the month of January, 1938, and that in his opinion the defendant had written said forgeries.

Other evidence was introduced by the state, which proved that certain other persons had their names carried on the pay roll at times when they did not work; and that defendant had forged and signed their names to said pay roll.

It is the defendant's contention in connection with his first assignment of error that it was not necessary for the county attorney to allege in his information any particular person who was cheated and defrauded by the defendant; but that when he had so alleged that a particular person or persons are cheated and defrauded, such statement in the information becomes a material allegation and must be proved by the state. If it is not proved, it constitutes a fatal variance between the allegations of the information and the proof. Attention is called to the testimony of Mrs. Grady Blackstone and R. H. Reid, in which they stated that they had not lost anything in the transaction in connection with the J. H. Ready check.

The prosecution was based upon section 2125, O. S. 1931, 21 Okla. St. Ann. § 1577, which reads as follows:

"Every person who sells, exchanges or delivers for any consideration any forged or counterfeited promissory note, check, bill, draft, or other evidence of debt, or engagement for the payment of money absolutely, or upon any contingency, knowing the same to be forged or counterfeited, with intent to have the same uttered or passed, or who offers any such note or other instrument for sale, exchange or delivery for any consideration, with the like knowledge and intent, or who receives any such note or other instrument upon a sale, exchange or delivery for any considera-

tion with the like knowledge and intent, is guilty of forgery in the second degree."

A variance in a criminal case is an essential difference between the accusation and the proof; and a variance is not material unless it is such as might mislead the defense, or expose the defendant to the injury of being put twice in jeopardy for the same offense. Woods v. State, 22 Okla. Cr. 365, 211 P. 519; Brashears v. State, 38 Okla. Cr. 175, 259 P. 665; Tiger v. State, 54 Okla. Cr. 202, 16 P. 2d 889; Garner v. State, 51 Okla. Cr. 368, 1 P. 2d 787; Wells v. Territory, 1 Okla. Cr. 469, 98 P. 483.

This contention of the defendant is highly technical; and in the face of the proof which so conclusively establishes his guilt, it cannot be sustained.

The check, itself, was set forth at length in the information. The proof establishes that the defendant had actually uttered and passed the check, and forged the name of J. H. Ready thereon. It is true, as stated by the attorneys for the defendant, there was no necessity to set forth in the information the names of any particular persons alleged to have been cheated and defrauded. In this particular instance, the allegation of the names of R. H. Reid and Grady Blackstone is surplusage.

The statute under which this prosecution is based has been discussed at length in the recent cases of Boyer v. State, 68 Okla. Cr. 220, 97 P. 2d 779, and L. Jones v. State, 69 Okla. Cr. 244, 101 P. 2d 860.

As was stated in the Boyer Case, supra:

"Where there is a present intent to defraud, the crime of forgery is complete, whether the expected advantage is to accrue from it to the defendant personally, or to another, or whether that purpose is successfully attained or not. * * *

"An uttering of a forged instrument is the knowingly passing as true, or attempt to pass as true, a forged instrument with intent to cheat and defraud."

In the instant case, it was not necessary to prove that any particular person was defrauded. If the state's proof is sufficient to show that the defendant uttered and passed a written instrument, knowing the same to be forged, with intent to defraud, the charge is proved, even though no person is actually defrauded.

In the defendant's brief in support of this proposition, he cites only one Oklahoma case, that of Bradley v. State, 63 Okla. Cr. 203, 74 P. 2d 126. This case will not sustain the contention made by the defendant herein. In the Bradley Case, the defendant admitted signing and negotiating the forged instrument, but interposed as a defense that he had lawful authority from the person whose name was forged to sign her name to the check. This court properly held that where such defense was interposed, the court should submit to the jury an instruction applicable to the defense based upon the hypothesis that it is true. In that case, the finding of specific intent to cheat and defraud Nellie Bradley, the mother of the defendant, was an essential element in the case.

But here, the defendant did not testify and offered no defense, and such special finding of intent to cheat and defraud a particular person is not necessary herein.

To be guilty under the statute involved herein, it is not necessary for the state to prove that anyone was defrauded. If the state proves passing of a forged instrument, the intent to defraud in many instances may be inferred from the act of uttering such instrument. There may be instances when the forgery will be discovered and the defendant caught before the actual defrauding occurs.

Here the information alleges that the defendant intended to cheat and defraud Reid and Blackstone; and the proof shows that they would have been actually defrauded if the investigator for the state had discovered the pay roll forgery before the warrant was cashed, as in that instance the payment on the warrant would have been stopped.

The presumption of the intent to cheat and defraud Reid and Blackstone may arise from the fact of passing the instrument which the defendant had forged to Blackstone. The defendant was evidently desirous of obtaining a pecuniary benefit to himself and did not care whether the State of Oklahoma, R. H. Reid, Grady Blackstone, J. H. Ready or all of them were ultimately the victims of his nefarious scheme.

As was stated in Underhill's Criminal Evidence (4th Ed.) page 683, § 683, (Forgery) Fraudulent Intent and Guilty Knowledge:

"* * * It is not necessary to show that it was the intention of the defendant to defraud any particular person. It is enough that a general intent to defraud is shown. The intent is always a question for the jury. It may be inferred by them from what the accused does and says and from all the facts and circumstances involved in the transaction." See, also, 23 Am. Jur., Forgery, §§ 43, 44.

The defendant next contends that the court erred in the giving of instructions Nos. 3 and 4 over the objection and exception of the defendant. These instructions correctly state the law. The contention of the defendant relates back to the same proposition as contained in his first assignment of error, that is, that the court should have set forth in these two instructions that it was necessary that the state prove that the defendant defrauded Grady Blackstone or R. H. Reid. The statements which we have heretofore made in connection with the first proposition,

likewise, dispose of the contention made in respect to the second assignment of error.

The defendant next contends that the court erred in admitting evidence which represents transactions of other alleged forgeries.

These exhibits show forgeries of names on pay rolls and state warrants made by the defendant at various times during the period the defendant was maintenance superintendent.

In Boyer v. State and L. Jones v. State, supra, a similar contention was made by the defendant therein. In those cases it was stated:

"As a general rule, evidence of other offenses, though of the same nature, is not admissible for the purpose of showing that defendant is guilty of the particular offense charged. To this rule, however, there are well-settled exceptions. Those applicable to the question presented on the record in this case are as follows:

"(a)  *  *  *
"(b)  *  *  *
"(c)  *  *  *

"(d) Evidence of other offenses is competent to prove the specific offense charged when it tends to establish a systematic scheme or plan embracing the commission of two or more offenses so related to each other that proof of one tends to establish the other, or to connect the defendant with the commission of the offense charged."

We hold that the court did not err in admitting this evidence for the purpose of showing the intent, scheme, and plan of the defendant in connection with the commission of the offense charged.

The defendant next contends that the court erred in giving instruction No. 6½. The record shows the following:

"The Court: I will give you this further instruction, Gentlemen: 'If you find the defendant guilty of forgery in the second degree, beyond a reasonable doubt, as herein charged, and are unable to agree on the punishment therefor, then simply say by your verdict that you find the defendant guilty of forgery in the second degree, if such be the case, and that you leave the punishment to be fixed by the court.'

"The Court: I will also give you a form of verdict to meet that instruction."

"Thereupon, the jury retired to further consider its verdict."

"By the Court: Show that after the jury had spent some hours of deliberation they stated to the court that they had reached a verdict but were unable to agree on the punishment and asked the court if they could return a verdict and leave the punishment to be fixed by the court.

"To which the defendant objected and demanded that the punishment in the case be left to the jury, and that they be required to fix the punishment, which was by the court refused, and to which the defendant excepted.

"Thereupon, the court gave the jury instruction No. 6½. To which the defendant objected and the objection was thereupon overruled. And to which action of the court in overruling the objection the defendant excepts."

Section 3107, O. S. 1931, 22 Okla. St. Ann. § 926, provides as follows:

"In all cases of a verdict of conviction for any offense against any of the laws of the State of Oklahoma, the jury may, and shall upon the request of the defendant assess and declare the punishment in their verdict within the limitations fixed by law, and the court shall render a judgment according to such verdict, except as hereinafter provided."

Section 3108, O. S. 1931, 22 Okla. St. Ann. § 927, further provides:

"Where the jury find a verdict of guilty, and fail to agree on the punishment to be inflicted, or do not declare such punishment by their verdict, the court shall assess and declare the punishment and render the judgment accordingly."

Instruction No. 5 instructed the jury that it was their duty to assess the punishment of the defendant, if they found him guilty, within the limits as set out in instruction No. 2. This instruction sufficiently complies with section 3107, O. S. 1931, 22 Okla. St. Ann. § 926. When the jury asked for an additional instruction upon the matter, the court correctly gave them instruction No. 6½, supra.

In the case of Dunn v. State, 60 Okla. Cr. 201, 63 P. 2d 772, this court upheld the sufficiency of an instruction, in substance, very similar to the one in the case at bar.

Finally, the defendant contends that the judgment and sentence of the court is excessive. As has been heretofore set forth, the jury did not fix the punishment, but left the same to the court. The district court heard the testimony of the witnesses, and is familiar with the situation involved in this case and the attitude of the county attorney towards further prosecution on the other alleged forgeries. We are quite certain the court took all of these factors into consideration in pronouncing the judgment and sentence against the defendant. Under these circumstances, we do not feel that the trial court abused his discretion. The facts would have justified the maximum punishment, provided, of course, that the county attorney does not contemplate continuing a prosecution on each of the other alleged forgeries. We do not feel that the defendant should have five years for each forgery by him committed, as the total number of years of imprisonment then assessed against the defendant probably would be excessive, even though the amount of money involved

amounts to a considerable sum. The uncontradicted proof is sufficient to sustain the punishment imposed herein.

From a careful consideration of the whole record, we are of the opinion that the defendant has had that fair and impartial trial which has been guaranteed by the statutes and Constitution of the State of Oklahoma, and that there are no errors in the record of sufficient importance to justify a reversal of this case.

For that reason, the judgment of the district court of Jackson county is hereby affirmed.

DOYLE, P. J., and BAREFOOT, J., concur.