Claude ADAMS, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A-12482.

Criminal Court of Appeals of Oklahoma.

July 24, 1957.

L. E. Tryon, Guymon, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Owen J. Watts, Ass't Atty. Gen., for defendant in error.

POWELL, Judge.

Claude Adams appeals from a conviction in the district court of Texas County where he was charged with the crime of lewd, indecent, and lascivious acts by an adult person towards a child under fourteen years of age. The jury found the defendant guilty, but left the punishment to be assessed by the court, who fixed the penalty at confinement in the State Penitentiary at McAlester for a period of ten years.

The State in making out its case used four witnesses. The defendant did not testify, and offered only the jailer to show that he had been incarcerated in the county jail since September 20, 1956 to the time of trial, held on April 8, 1957.

The evidence on the part of the State tended to show that a Mrs. Faye Scott, with her husband Kenneth Scott, who at the time was employed and lived at the Panhandle Eastern Booster Station, twelve miles south of Hardesty, in Texas County, Oklahoma, and their four-year old daughter Becky, had on Sunday afternoon, July 1, 1956, gone to the Wagon Wheel Inn, operated by a Mr. and Mrs. Pierson, to visit. Mrs. Scott had formerly been employed by the Piersons in their cafe and beer parlor.

Among customers present when the Scotts were visiting with the Piersons, was Claude Adams, the defendant. He was drinking beer and arguing with other customers.

Mrs. Scott testified that there was a cement slab to the immediate rear of the Inn and that she permitted her daughter Becky to go with a six-year old girl to play on the slab with some boxes and crates; that she would ever so often go out to see how the children were getting along. She finally went to get her daughter to take her home, and found her in the embrace of the defendant, who had previously left the Inn by the front door. There were vacant buildings on each side of the Inn. She said that defendant had her daughter pulled up against him as tight as he could get her, and was rubbing one of her arms. She said that she was so unnerved that she hesitated momentarily but finally ran and grabbed Becky; that she heard Becky telling defendant, "Mommy will buy me soda pop. I don't want soda pop." She said that when she picked her daughter up defendant's clothing was protruding in front. She said that Becky was crying and she also heard her say to defendant, "I don't want to go. I don't want to go." She said that defendant turned around and slowly walked away.

On cross-examination Mrs. Scott was asked what she reported about the incident on going back into the Inn. She said: "I won't say every word I said because I don't remember. I do know that I told Kenny that man was molesting Becky, and Becky told me what he promised if she would go between the two buildings with him." She was asked if she heard defendant ask Becky anything, and she answered: "No, he did make the remark when I picked her up he wasn't going to hurt her." She admitted that she had thought the defendant intoxicated.

Arlie C. Binion, deputy sheriff of Perryton, Texas, testified to taking the defendant into custody on July 4, 1956 for investiga-

tion and contacting Ray Lester of the F.B.
I. at Amarillo on July 5; and that defend-
ant agreed to go with them to Hardesty,
Oklahoma, to clean up an incident reported
to them to have taken place there. He
stated that Mrs. Faye Scott identified the
defendant as the person who molested her
four-year old daughter Becky on July 1,
1956. Mr. Scott was in the field plowing
so witness said that he, defendant and Mr.
Lester drove out and Scott came and got in
the car with them and they questioned de-
fendant with reference to his molesting the
little girl. Said he (after the court caution-
ed him that he must give the exact words
even though there were ladies on the jury):

"Mr. Adams when asked if he tried
to coax the little girl between the build-
ings as we had heard, admitted he had.
I believe he said with soda pop. Mr.
Lester asked Mr. Adams what his pur-
pose was or what he intended to do
with the little girl when he got her
back there. Mr. Adams stated, 'Oh,
you know—put my prick between her
legs.'"

Raymond Lester, special agent for the
F.B.I. testified substantially as officer
Binion, except he detailed the investigation
more fully, and as to defendant's state-
ment said that he asked him, What was
your motive behind this?" and defendant
answered, "I don't know. I have done this
all my life."

For reversal counsel advances three prop-
ositions and a final plea that the judgment
and sentence of the court is excessive and
not sustained or justified by the evidence.

■ First, it is urged that the court
erred in the giving of oral instruction to the
jury after it had returned with a verdict
which had been excepted to by the defend-
ant. Cited in support of this is 22 O.S.1951
§ 831, reading, in part:

"* * * All instructions given
should be in writing, unless waived by
both parties, and shall be filed and
become a part of the record in the
case."

It is complained that the court, after the
jury had returned with a verdict, which
read:

"We the jury drawn, impaneled and
sworn in the above entitled cause, do
upon our oaths find the defendant
guilty as charged in the information
herein and assess his punishment at:
—to be left up to the court. Reece
Langley, Foreman."

orally instructed the jury as follows:

"The Court: Ladies and gentlemen
of the jury, there has been an objec-
tion voiced in the record and I will
impose on you to this extent. Our
statutes provide if the jury is unable to
assess punishment, then it will be left to
the court and you don't so state.
An objection has been interposed to
the form of the verdict. I am not try-
ing to change your verdict, ladies and
gentlemen, but the court calls your at-
tention since there has been an objec-
tion there should be, 'and being unable
to agree on the punishment, the punish-
ment is left up to the court.' May I
ask you again to return to your jury
room, and as you understand, you failed
to use certain wordage that should go
in there. Thank you."

■ The defendant argues that by the
verbal instruction the court actually dictated
the words that should go into the verdict
and therefore the verdict thereafter return-
ed was not the verdict of the jury, but the
verdict of the court. Overlooked is the fact
that the jury had already found the defend-
ant guilty as charged and only the form of
the verdict was involved. The court was at-
tempting to aid the jury in correcting a
slight defect in the form of the verdict,
and nothing more. The fact is the record
discloses that the applicable instruction
covering that matter had already been given
in writing by the court, being Instruction
No. 5, but the jury had not strictly com-
plied with it. The court on objection of
counsel had insisted this instruction be com-
plied with. It reads:

"Should you find from the evidence, under the instructions, and beyond a reasonable doubt, that the defendant is guilty, it will then be your duty to assess the punishment therefor, in your verdict, within the provisions of law set out herein. However, should you be unable to agree on the punishment, so state in your verdict, and leave it to be assessed by the court."

It is next contended that the court erred in not requiring the jury to fix the penalty as requested by the defendant. Cited in support of this proposition is Craig v. State, 31 Okl.Cr. 19, 236 P. 909. It will be considered later.

It is admitted that the court in the first instance had given a correct instruction, No. 5, but it is insisted that the verbal instruction heretofore quoted nullified that. Counsel cites 22 O.S.1951 § 926, reading:

"In all cases of a verdict of conviction for any offense against any of the laws of the State of Oklahoma, the jury may, and shall upon the request of the defendant, assess and declare the punishment in their verdict within the limitations fixed by law, and the court shall render a judgment according to such verdict, except as hereinafter provided."

Section 927 of the same Title is pertinent. It reads:

"Where the jury find a verdict of guilty, and fail to agree on the punishment to be inflicted, or do not declare such punishment by their verdict, the court shall assess and declare the punishment and render the judgment accordingly."

 In the first instance, from what we have said above, we do not consider that the court's verbal explanatory instruction nullified written Instruction No. 5, and therefore proposition number two is not valid. However, even if we should so hold, the fact remains that the defendant did not make his request for the jury to fix the punishment prior to the time that the jury started its deliberations, but after the jury returned a verdict of guilty. For such reason the request came too late. Fain v. State, 14 Okl.Cr. 556, 174 P. 296; Ex parte Monroe, 89 Okl.Cr. 358, 207 P.2d 944; Tilghman v. Burns, 91 Okl.Cr. 359, 219 P.2d 263.

In Ladd v. State, 89 Okl.Cr. 294, 207 P.2d 350, 351, the various conflicting opinions from this court are reviewed. Craig v. State, supra, was in effect overruled. This court said, paragraphs 2, 3, and 4 of the syllabus:

"Under 22 O.S.1941 [1951] §§ 926 and 927, it is the duty of the court upon request of defendant, to instruct the jury to fix the punishment to be assessed the defendant upon a verdict of guilty, giving them an opportunity to pass upon the question as to the punishment to be inflicted.

"The court should instruct the jury that if they find the defendant guilty of the crime charged beyond a reasonable doubt, and after due deliberation are unable to agree on the punishment, they should so state in their verdict and leave the punishment to the court.

"When a verdict is returned into court, stating that the jury finds the defendant guilty and is unable to agree upon the punishment, the court has the right to fix the punishment within the limitations provided by law, even though defendant had requested the court to instruct the jury to fix the punishment."

It is next asserted that the court erred in admitting incompetent and irrelevant testimony over the objection and exception of the defendant.

Counsel for defendant says that the questioning by the county attorney of deputy sheriff Binion and F.B.I. Agent Lester materially prejudiced him. Officer Binion' was questioned as follows:

"A. Mr. Adams did state he had molested the little girl and when he was asked in reference to previous things we had learned, he had attempted to coax—

"Mr. Tryon: We object to any previous things he might refer to.

"The Court: As you know, there can't be other matters injected but if it is relative to this particular instance, you will proceed.

"A. This was a question concerning this incident."

From the wording of the question asked and by defendant now complained of, the county attorney merely indicated that his office had learned of the incident back of the Inn where the evidence showed that defendant tried to coax the little Scott girl and her friend between two buildings. This is affirmed by the statement: "This was a question concerning this incident."

The objectionable portion of Mr. Lester's examination is as follows:

"Q. You went to Perryton [Texas] by virtue of a call from an officer? A. That is right. Upon arriving at Perryton that was the first time I saw the defendant Adams. That was when I did talk to him.

"Q. May I ask you this, whether or not prior to that time you had been endeavoring to locate this defendant? A. Yes, sir.

"Q. Then later on after you went there and talked with the defendant, did you talk with him concerning the matter which your department were interested in? A. Yes, sir, I did.

"Q. That, of course, doesn't concern this case in any way? A. No, sir.

"Mr. Tryon: We object to this conversation.

"Mr. Reynolds: I am not offering the conversation. That is what I am staying out of.

"The Court: Just a moment. One at a time, gentlemen. Both of you know the rules of evidence and the objection is overruled but you will refrain from implicating there was another transaction.

"Mr. Tryon: Note an exception to the ruling of the court.

"The Court: You will proceed."

Counsel also points out that Mrs. Faye Scott had, when she was questioned as to how she came to file the charges, stated in substance that Mr. Allen, County Attorney of Perryton, Texas, had urged her to file a charge against defendant, as "they had picked him up and didn't have anything to hold him on but found out what happened at Hardesty."

This later statement was developed from questioning by counsel for defendant on cross-examination and no objection was interposed.

It is argued specifically that the above questioning caused the jury to believe that the defendant was involved in other crimes than the one charged. There is some truth to this, but we note that the court admonished the attorneys in the presence of the jury that no other matter could be injected in the case where not relevant to the crime charged, and the court further admonished the attorneys in the presence of the jury that they knew the rules of evidence and should refrain from implying that there was another transaction involved other than the particular crime at bar.

While we do not in any way approve of county attorneys seeking to get incompetent matters before a jury, and do not approve of the questioning of witness Lester, complained of, we in addition to the admonitions of the court note that by the testimony of Mrs. Scott, it was stated the Texas authorities "had picked him [defendant] up but did not have anything to hold him on." He had apparently urged her to file charges. So any indication that there was another case would surely be offset by this revelation from Mrs. Scott's testimony.

It is finally urged that the judgment and sentence of the court is excessive and not sustained by the evidence. Counsel points out that the charge was based on 21 O.S.A. § 1123, which provides that on conviction a defendant may be punished by imprisonment in the Oklahoma State Penitentiary for a term of not less than one

year; nor more than twenty years. The delay in Mrs. Scott filing the charge is pointed out; the non-interest of the Oklahoma officers in the case, and the fact that no pursuit or arrest of defendant was made immediately following the acts charged. A number of cases are cited where modification was made as low as two years where the circumstances were more aggravated than here.

We believe that justice will best be served by reducing the sentence from ten years to five years in the State penitentiary, and as so modified the judgment is affirmed.

BRETT, P. J., and NIX, J., concur.